CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE ROAD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFF
DR. HIEU PHAM

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

HIEU PHAM, DDS, MD

      Plaintiff,

vs.

BOARD OF REGENTS OF THE
UNIVERSITY OF CALIFORNIA SAN
FRANCISCO, SCHOOL OF DENTISTRY,
DR. TONY POGREL, *In His Individual
Capacity,* DR. BRIAN BAST, *In His
Individual Capacity,* and DOES 1-50,
INCLUSIVE,

      Defendants.

**Case No.:**

**COMPLAINT FOR DAMAGES:**

1. VIOLATIONS OF FEDERAL FAIR
   STANDARD LABOR ACT:
   RETALIATION
2. VIOLATION OF FEDERAL EQUAL
   PAY ACT
3. DEPRIVATION OF FIRST
   AMENDMENT RIGHT OF FREE
   PUBLIC CONCERN SPEECH
4. CIVIL RIGHTS VIOLATION
   DISCRIMINATION IN VIOLATION
   OF TITLE VII - RETALIATION
5. DISCRIMINATION IN VIOLATION
   OF TITLE VII - DISCRIMINATION
6. DISCRIMINATION IN VIOLATION
   OF 42 U.S.C. § 1981a
7. RETALIATION IN VIOLATION OF
   CIVIL RIGHTS 42 U.S.C. § 1983
   MONEL ACTION
8. RETALIATION IN VIOLATION OF
   CIVIL RIGHTS DEPRIVATION OF
   PROPERTY AND DUE PROCESS
   IN VIOLATION OF FOURTEENTH
   AMENDMENT U.S.C. § 1983
9. CIVIL RIGHTS VIOLATION
   DISCRIMINATION IN VIOLATION OF
   TITLE VII HOSTILE WORK
   ENVIRONMENT

**JURY TRIAL DEMANDED**

PLAINTIFF HIEU PHAM, DDS, MD, an individual, alleges against DEFENDANTS as follows:

1.   PLAINTIFF HIEU PHAM, DDS, MD (hereinafter "PLAINTIFF") is an adult natural person who is and was at all times relevant to this Complaint, a resident of San Francisco County, State of California.

2.   DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA SAN FRANCISCO, SCHOOL OF DENTISTRY (hereinafter "UCSF" or "EMPLOYER")

3.   DEFENDANT DR. ANTHONY POGREL (hereinafter "DR.  POGREL") is an individual employed by UCSF. At all relevant time, DEFENDANT DR. ANTHONY POGREL is and was a managing agent of the Board of Regents of the University of California.

4.   DEFENDANT BRIAN BAST (hereinafter "DR. BAST") is an individual employed by UCSF. At all relevant time, DEFENDANT BRIAN BAST is and was a managing agent of the Board of Regents of the University of California.

5.   PLAINTIFF is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT DOES 1 through 50 inclusive, and therefore sues these DEFENDANTS by such fictitious names. PLAINTIFF will seek leave to amend his complaint to allege their true names and capacities when the true names and capacities have been ascertained. PLAINTIFF is unaware of the true names of Defendants Does 1 through 50.

6.   PLAINTIFF sues these DEFENDANTS by said fictitious names, and will amend this complaint when the true names and capacities are ascertained, when such facts pertaining to liability are ascertained, or as permitted by law or by the Court. PLAINTIFF is informed and believes that each of the fictitiously named DEFENDANTS is in some manner responsible for the events and allegations set forth in this complaint.

7.  PLAINTIFF is informed, believes, and thereon alleges that at all relevant times, each DEFENDANT was an employer, was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other DEFENDANTS, and was engaged with some or all of the other DEFENDANTS in a joint enterprise for profit, and bore such other relationships to some or all of the other DEFENDANTS so as to be liable for their conduct with respect to the matters alleged in this complaint.

8.  PLAINTIFF is informed, believes, and thereon alleges that each DEFENDANT acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each DEFENDANT knew or should have known about, authorized, ratified, adopted, approved, controlled, and/or aided and abetted the conduct of all other DEFENDANTS. As used in this complaint, "DEFENDANT" means "DEFENDANTS and each of them," and refers to the DEFENDANTS named in the particular cause of action in which the word appears.

9.  At all times mentioned herein, each DEFENDANT was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other DEFENDANTS and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other DEFENDANTS.

10. PLAINTIFF makes the allegations in this complaint without any admission that, as to any particular allegation, PLAINTIFF bears the burden of pleading, proving, or persuading, and PLAINTIFF reserves all of PLAINTIFF'S rights to plead in the alternative.

11. PLAINTIFF is informed, believes, and thereon alleges that at all times mentioned in this Complaint, DEFENDANTS were the agents and employees of their CO-DEFENDANTS, and in doing the things alleged in this Complaint were acting within the course and scope of their agency and employment and acted in such a manner as to ratify the conduct of their CO-DEFENDANTS.

## JURISDICTION AND VENUE

12. DR. PHAM brings this action pursuant to the laws of the United States of America. Jurisdiction is founded upon 28 U.S.C. § 1331, as this case involves a federal question of law.

13. Venue is proper in this judicial district because DR. PHAM'S injuries, damages and harms, including the violation of DR. PHAM'S civil rights, occurred in this judicial district. Further, one or more of the DEFENDANTS reside, are headquartered and conduct business in this judicial district. DEFENDANTS are subject to suit in this Judicial District and regularly employ 15 or more persons.

14. On or about May 7, 2015, and within the time provided by law, PLAINTIFF filed verified charges of discrimination with the California Department of Fair Employment and Housing ("DFEH") and against the named DEFENDANTS. PLAINTIFF amended his complaint on December 29, 2016 to correctly identify the name of Respondent. On September 30, 2016, Plaintiff received his "Right to Sue" Notices from the DFEH pertaining to DEFENDANTS and now timely files this action.

## GENERAL ALLEGATIONS

15. PLAINTIFF DR. PHAM alleges that DEFENDANT BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA SAN FRANCISCO, SCHOOL OF DENTISTRY (hereinafter "UCSF" or "EMPLOYER"), DEFENDANT DR. ANTHONY POGREL (hereinafter, DEFENDANT DR.  POGREL ), and DEFENDANT BRIAN BAST (hereinafter, DEFENDANT DR. BAST),  through DEFENDANT Employer's managing agents, discriminated and retaliated against DR. PHAM for engaging in protected activity, including his complaints regarding DEFENDANTS' wrongful refusal to pay his earned wages when due. DR. PHAM also herein complains that DEFENDANTS maintained and implemented a Hostile Work Environment, and a series of wage schemes that caused DR. PHAM to be deprived of earned wages. DEFENDANTS had prior knowledge and notice that these wage schemes were illegal, violating state and federal law, but DEFENDANTS persisted and continue to persist in maintaining and implementing such illegal wage schemes, to the detriment of DR. PHAM.

16. At all relevant times, DR. PHAM is an employee of DEFENDANTS, acting in the normal course and scope of employment duties with DEFENDANTS.

**PARTIES**

17.  DR. PHAM is a citizen of the United States of America and is a resident of San Francisco, CA.   At all times herein relevant, DR. PHAM was and is an employee of DEFENDANT UCSF.

18.  DEFENDANT UCSF is a Division of the Government of the State of California and is incorporated under the Laws of the State of California. DEFENDANT UCSF does business in the City of San Francisco under the business name University of California San Francisco. UCSF is located at 707 Parnassus Ave, San Francisco, CA 94143, and the DEFENDANT Board of Regents business mailing address is 1111 Franklin Street, 12th Floor, Oakland, CA 94607.

19.  DEFENDANT DR. ANTHONY POGREL is a citizen of the United States of America and is a resident of San Francisco, CA.   At all times herein relevant, DEFENDANT DR. ANTHONY POGREL was and is a managing agent of DEFENDANT UCSF.

20.  DEFENDANT DR. BRIAN BAST is a citizen of the United States of America and is a resident of San Francisco, CA.  At all times herein relevant, DEFENDANT BRIAN BAST was and is a managing agent of DEFENDANT UCSF.

**DOE DEFENDANTS**

21.  PLAINTIFF does not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT DOES 1 through 50 inclusive, and therefore sues these DEFENDANTS by such fictitious names. PLAINTIFF will seek leave to amend his complaint to allege their true names and capacities when the true names and capacities have been ascertained.

**RESPONDEAT SUPERIOR**

22.  All of the described conduct, acts, and failures to act are attributed to agents and managing agents of DEFENDANT UCSF. Said acts, conduct, and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment and agency.

23.  Each DEFENDANT, at all relevant times, was acting as the agent and co-conspirator of the other, and each endorsed, ratified, encouraged, agreed with, and took overt acts to carry out

and accomplish the illegal conduct, activities and schemes alleged herein. All illegal conduct by managing agents was endorsed, ratified, encouraged and agreed to by each DEFENDANT and was foreseeable, and DEFENDANTS, and each of them, had prior knowledge of said illegal conduct, rendering DEFENDANT EMPLOYER vicariously liable. DEFENDANTS are individually liable for the acts and omissions of each other, based on the facts that each DEFENDANT endorsed, ratified, encouraged, conspired and agreed to the illegal conduct as herein alleged.

24. DEFENDANT UCSF's Executive Leadership Team and Board Members, and each of them, intentionally, willfully, and negligently failed to provide any oversight over DEFENDANT UCSF and its managing agents to ensure compliance with all Federal and State laws, including, but not limited to, laws mandating the timely, correct payment and record keeping of employees' wages; laws mandating that employees work in an environment free of discrimination; and laws mandating that employers refrain from retaliating against employees who participate in protected activity, such as employees complaining about the untimely and inaccurate payment of wages. DEFENDANT UCSF's Executive Leadership Team and Board Members, and each of them, willfully failed to promptly collect and withhold taxes; and failed to pay and failed to withhold income and employment taxes, including social security taxes, and other Federal Payroll tax requirements.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

25. PLAINTIFF has exhausted his administrative remedies by filing charges with appropriate federal and state agencies, including the EEOC and the DFEH. Further, PLAINTIFF will file this Claim as his lawsuit within the statutory period following the issuance of the Right-to Sue Letters from the EEOC and DFEH.

## WORKERS' COMPENSATION EXCLUSIVITY DOES NOT APPLY

26. Each and every wrongful, injurious, intentional, willful, discriminatory, harassing act and failure to act by DEFENDANTS were not normal incidents of employment and were outside the scope of the employment bargain. Thus, the Workers' Compensation exclusive remedy set

forth in California Labor Cod § 3600 et seq. will not preempt or bar PLAINTIFF'S  right to recover for damages set forth herein.

## DAMAGES

27.  As a direct and legal result of DEFENDANTS' conduct as set forth herein, DR. PHAM has suffered, and continues to suffer, substantial losses in earnings, significant loss of reputation, severe mental, and emotional distress, humiliation, loss of enjoyment of life, misery, inconvenience, anxiety, discomfort, fear, and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, embarrassment and anguish, all to his economic and non-economic damage in an amount according to proof.

## STATEMENT OF FACTS

28.  DR. PHAM has been employed as a half-time senior dentist in DEFENDANT UCSF's Department of Oral and Maxillofacial Surgery since August 6, 2001. DR. PHAM has a contract with DEFENDANT DR. ANTHONY POGREL, the Department Chairman, to be employed as a 50% Senior Dentist, to provide two days of clinical service. In return, the department is to pay DR. PHAM at the top level of the senior dentist salary scale with full benefits (medical, dental, vision, paid vacation, sick leave), cover DR. PHAM's expenses for four (4) meetings up to $16,000, pay for DR. PHAM's dues (medical and dental licenses, AAOMS & Cal AOMS) and subscription costs (Esthetic Surgery Journal, OMFS Clinics of NA, Facial Plastic Surgery of NA).  DR. PHAM's salary, benefits and expenses are paid by the clinical income DR. PHAM generates from patient care.

29.  DR. PHAM has been employed with the department for more than 15 years and has made significant contributions in teaching, patient care and clinical productivity.  Even though DR. PHAM is a 50% faculty, he brings in more clinical income than the full time surgeons.

30.  DR. PHAM has developed innovative techniques that allow cranial bone to be harvested safely and efficiently in an office setting.  DR. PHAM is the first and only surgeon who has harvested cranial bone in an office setting at UCSF.

31. DR. PHAM is the first faculty member to perform in-office hip graft for implant reconstruction. This procedure has benefited patients, residents and faculty. Implant patients with large bone deficit can now be reconstructed with a hip graft without the cost of an operating room and hospitalization. DR. PHAM has trained the staff and residents on how to set up for and assist in this procedure effectively. Now, other faculty members are benefiting from working with a well-trained staff, without whom a hip graft cannot be performed in an office setting. This has also greatly benefited dentally-crippled patients who cannot wear dentures and do not have enough bone to support implants without a large bone graft.  Now these patients can be reconstructed with dental implants, thanks to the feasibility of in-office hip grafts.

32. Because of the large number of complicated bone graft cases, DR. PHAM has developed anesthetic techniques that allow these longer cases to be carried out safely and effectively in the office setting.  Patients, residents and faculties have all benefited from these techniques.

33. DR. PHAM has modified the traditional tibial harvesting technique so that it allows this procedure to be carried out safely and effectively in an office setting. He popularized the tibial graft procedure used not only for sinus lift but also for the Onlay Graft. This allows patients who have failed non-autogenous grafts to be reconstructed with autogenous grafts. DR. PHAM developed special techniques to harvest ramus grafts, which lower the risks of inferior alveolar nerve injury.

34. DR. PHAM made the D1201-UCSF Oral & Facial Surgical Center into the central hub of implant reconstruction for the dental school. This is where Northern California patients can get world-class implant reconstructive surgery. This is evidenced by the referral pattern that DR. PHAM developed in department D1201.  Drs. Finzen, Sharma, and Setia refer the bigger implant reconstructive cases to DR. PHAM. The former Dean, Dr. Bertolami, preferentially refers patients to DR. PHAM as the expert for implant reconstruction at UCSF.  Other faculty members routinely ask for DR. PHAM's help in difficult cases.  For example, DEFENDANT DR. BAST, the department's current chairman, asked for DR. PHAM's help on a bone graft case in which he had failed twice.  DEFENDANT DR. BAST also referred his most difficult trauma patient to

DR. PHAM to correct the post traumatic facial deformities he was not able to fix. On November 30, 2016, DR. PHAM discovered that DEFENDANT DR. BAST billed and took credit for the work on a patient that DR. PHAM had actually performed, depriving DR. PHAM of his income from this surgery. DEFENDANT DR. BAST billed $7,000.00 for the surgery that was performed by DR. PHAM. DEFENDANT DR. BAST did not have the skill to perform the repair of the patient's zygomatic complex fracture.   He failed to completely repair the deformities. DEFENDANT DR. BAST then referred this patient to DR. PHAM to correct the severe deformities. DR. PHAM was not credited nor received any payment for this most difficult surgery.

35.  DR. PHAM has developed and improved surgical techniques to predictably augment atrophic alveolar ridges by harvesting ramus, tibia, iliac crest and cranial bone in the office setting, reducing the cost and morbidity to the patients. DR. PHAM has also made significant contributions in resident and student training, as well as improving the academic and clinical reputations of DR. PHAM's Department and the University. Dean Charles Bertolami has recognized DR. PHAM's expertise in implants and referred patients to DR. PHAM. Even though DEFENDANT DR. POGREL, former chairman, does not want to publicly acknowledge DR. PHAM's expertise in implant reconstruction, he has obviously acknowledged it privately because both he and his wife selected DR. PHAM when they needed implants.

## BACK WAGES DUE AND OWING

36.      In addition to DR. PHAM's irreplaceable roles as clinician, surgeon, and teacher, DR. PHAM has also contributed greatly to the department's fiscal health.  Although DR. PHAM is paid only as a half-time senior dentist, over the last 15 years DR. PHAM has brought in more clinical revenue to the department than any other faculty member. On average, faculty members in the department receive a salary that is equivalent to 55% of his or her income-generated collections.  In contrast, DR. PHAM's salary is only 23% of his collections. The highest revenue generated by a full time faculty member is that of DEFENDANT DR. BAST, the current chairman.  He brought in $4,945,332 (from August 1, 2003 to December 31, 2015).  The former chairman, DEFENDANT DR. POGREL, in a full time position, brought in $3,866,812.  The

former vice chairman, Dr. Richard Smith, in a part time position, brought in $189,977 in that same period of time and drew $526,637 in salary. DR. PHAM, in a half-time position, generated the most clinical income of any faculty, namely $4,991,882.

37.     DR. PHAM was told by Chairman DEFENDANT DR. POGREL that DR. PHAM's salary would be at the top end of the "senior dentist" salary scale because he is a specialist, and because of the large income he brings into the department. In addition, the department would also cover DR. PHAM's expenses for four (4) meetings (approximately $16,000) annually, in addition to DR. PHAM's medical and dental license fees, subscriptions, and association dues. DR. PHAM was told by DEFENDANT DR. POGREL on numerous occasions that DR. PHAM's salary would be adjusted when the University increased this salary range so that he would always be paid at the highest level of a senior dentist. Per DEFENDANT DR. POGREL's verbal and written communications, "should this salary scale change, a revised honorarium of understanding shall be issued." A revised salary scale was implemented for all the other physicians, but not for DR. PHAM. DR. PHAM's salary has not been kept commensurate with that level. DR. PHAM has not received an honorarium of understanding since April 12, 2006.

38.     In late 2004 and early 2005, DEFENDANT DR. POGREL offered DR. PHAM a full-time position in the department. DEFENDANT DR. POGREL verbally communicated to DR. PHAM that this job would pay $239,600 (4 x the base salary $59,900=$239,600), but when DR. PHAM asked for a written contract, DEFENDANT DR. POGREL  reduced the offer to $42,100 as the base salary.

39.     After this unsuccessful bid to convince DR. PHAM to accept a full time position, DEFENDANT DR. POGREL agreed to pay DR. PHAM at the highest level of the senior dentist pay scale, evidenced by the Statements of Proposed Compensation below (dated April 4, 2005, June 16, 2005, and April 12, 2006).

40.     Per UCSF Central HR record, there was a salary increase for senior dentists on October 1, 2007, increasing from $179,900 to $210,400. This was a significant jump of $30,500.

Per DR. PHAM's contract with DEFENDANT DR. POGREL, the department should have increased DR. PHAM's salary accordingly, but did not do so.

41.     Since October 1, 2007, DR. PHAM's salary has stopped being at the top of the senior dentist salary scale, the lower pay representing a breach of the contract DR. PHAM had agreed to with DEFENDANT DR. POGREL. DR. PHAM informed DEFENDANT DR. POGREL of this breach of contract in December, 2011. DEFENDANT DR. POGREL's response was that DR. PHAM was already paid at the highest level of staff dentist.  This was blatantly false.

42.     DEFENDANT DR. POGREL colluded with Dr. Richard Smith to misinform DR. PHAM about the senior dentist pay scale.  Both lied to DR. PHAM, asserting that it would take 20 years to get to the top of the senior dentist pay scale, and yet at the same time DEFENDANT DR. POGREL had clearly told DR. PHAM that he was already at the highest level for a senior dentist.  DEFENDANT DR. POGREL informed DR. PHAM that he was at step 6 of the Senior Dentist pay scale. This representation by DEFENDANT DR. POGREL was false.

43.     There are no steps in the Senior Dentist pay scale.  The dentist pay scale has only 3 Levels: minimum, middle and maximum.  DR. PHAM had been paid at the maximum level since July 1, 2004 because of the amount of income he brought into the department. According to the Dentist Salary range provided by UCSF HR, there was a $30,500 increase on October 1, 2007, but DEFENDANT DR. POGREL failed to send DR. PHAM a revised honorarium of understanding and did not appropriately increase DR. PHAM's salary.

44.     The Excel spreadsheet below shows that DEFENDANT DR. POGREL has failed to fulfill the contract since October 1, 2007, and DR. PHAM has been underpaid by more than $144,719.06.  DR. PHAM hereby demands this back pay plus interest, and full enforcement of the contract which stipulates that "the department pay DR. PHAM at the top level of the senior dentist salary scale, cover DR. PHAM expenses for four (4) meetings amounting to $16,000, dues (medical and dental licenses, AAOMS & Cal AOMS) and subscriptions (Aesthetic Surgery Journal, OMFS Clinics of NA, Facial Plastic Surgery of NA)."

45.     The Salary History for DR. HIEU D. PHAM'S ("HDP") monthly salary Max of Sr. Dentist Salary Range full time HDP's monthly salary per agreement@ 50% Amount HDP was underpaid per indicated period:

| Date | Year Salary received | Reason for increase | Monthly Salary Received | Highest Annual Senior Dentist (SD) 100% | Salary per Agreement @ 50% SD | Unpaid Wages |
|------|------|------|------|------|------|------|
| 8/6/01 | $140,000 | hired | | $153,200.00 | | |
| 10/1/02 | $142,100 | not IDed | | $160,900.00 | | |
| 7/1/04 | $160,900 | equity | $6,704.17 | $160,900.00 | $6,704.17 | Paid @highest level |
| 7/1/05 | $167,900 | Merit | $6,995.83 | $167,900.00 | $6,995.83 | Paid @highest level |
| 10/1/05 | $173,356 | Merit | $7,223.17 | $173,800.00 | $7,241.66 | Paid @highest level |
| 10/1/06 | $179,424 | Merit | $7,476.00 | $179,900.00 | $7,495.83 | Paid @highest level |
| 10/1/07 | $186,001 | Merit | $7,750.04 | $210,400.00 | $8,766.67 | Below highest level |
| 12 mos | | | | | | (12,199.56) |
| 10/1/08 | $186,001 | | $7,750.04 | $210,400.00 | $8,766.67 | Below highest level |
| 12 mos | | | | | | (12,199.56) |
| 10/1/09 | $186,001 | | $7,750.04 | $210,400.00 | $8,766.67 | Below highest level |
| 9 mos | | | | | | (9,149.67) |
| 7/1/10 | $186,001 | | $7,750.04 | $210,400.00 | $8,766.67 | Below highest |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7 mos | | | | | | (7,116.41) |
| 2/1/11 | $186,001 | | $7,750.04 | $218,100.00 | $9,087.50 | Below highest level |
| 5 mos | | | | | | (6,687.30) |
| 7/1/11 | $192,199 | Merit | $8,008.29 | $224,600.00 | $9,358.33 | Below highest level |
| 24 mos | | | | | | (32,400.96) |
| 7/1/13 | $197,965 | Merit | $8,248.54 | $235,800.00 | $9,825.00 | |
| 12 mos | | | | | | (18,917.52) |
| 7/1/14 | $202,518 | Merit | $8,438.25 | $247,600.00 | $10,316.67 | |
| 12 mos | | | | | | (22,541.04) |
| 7/1/15 | $207,986 | Merit | $8,666.08 | $255,000.00 | $10,625 | |
| 12 mos | | | | | | (23,507.04) |
| 7/1/16 | $263,000 | equity | | $263,000.00 | $10,958.34 | |
| Total Unpaid Paid Wages to July 1, 2016 **Recent HR Evidence as of December 2, 2016 shows the total amount owed is $ 177,327.00** | | | | | | ($144,719.06) |

46.     DEFENDANT DR. POGREL has, on an ongoing basis, created a hostile work Environment for DR. PHAM. In 2005, during a salary negotiation, DEFENDANT DR. POGREL physically pushed DR. PHAM out of his office because he did not want to increase DR. PHAM's salary and refused to give DR. PHAM a "Z" factor (bonus/ incentive) for DR. PHAM's high collections during 2003-2005.  DEFENDANT DR. POGREL claimed that University's policy prevents paying DR. PHAM any higher than the top level of senior dentist and that DR. PHAM was not allowed a "Z" factor. A "Z" factor is a bonus/incentive paid for individual performance. DR. PHAM was given a "Z" factor of $8000 on October 8, 2002 by DEFENDANT POGREL for annual collection of $182,568, and he was led to believe that a "Z" factor would be given for equal or better performance in subsequent years. After 2 years as 50% time senior dentist, DR. PHAM's clinical practice grew to the biggest practice in the department because of DR.

PHAM's excellent surgical skills, his devotion to patients and his hard work.  Instead of giving DR. PHAM a bonus for his extraordinary performance, contribution to residency training and financial contribution to the department's fiscal health, DEFENDANT DR. POGREL physically pushed DR. PHAM out of his office and banned DR. PHAM from department meetings.  DR. PHAM informed Vice Chair Dr. Richard Smith of this physically assaultive pushing incident. Vice Chair Dr. Smith advised DR. PHAM to report the incident.  Fearful of retaliation, DR. PHAM did not report the incident, but Dr. Richard Smith informed DR. PHAM that he, Dr. Smith, did report the assaultive pushing incident to DEFENDANT DR. POGREL's last Stewardship review committee. Since the report by Dr. Smith, DEFENDANT DR. POGREL has engaged in a relentless campaign of retaliation against DR. PHAM, exemplified by the following acts of retaliatory harassment.

## **ACTS OF RETALIATION**

47.     DEFENDANT DR. POGREL instructed his secretary, Connie D'Aura, to open DR. PHAM's personal mail from the California Dental Board, on Dec 19, 2011.  DEFENDANT DR. POGREL falsely claimed that he had opened it out of concern that DR. PHAM might have "missed" an important deadline.  DR. PHAM was present and working on campus that day, so if there was a concern, DEFENDANT DR. POGREL's secretary could have easily brought the mail to DR. PHAM.  DEFENDANT DR. POGREL also intentionally opened a letter that did contain confidential communication from the California Dental Board.  He did NOT open a license renewal letter that arrived a few months earlier, so his defense about concern about a "missed" deadline was not legitimate and was false.

48.     DEFENDANT DR. POGREL gave a very positive evaluation of DR. PHAM in October 2011.

**Evaluation of Hieu Pham, 10/17/11**
**DR. PHAM continues to be a valuable resource to the Department of Oral and Maxillofacial Surgery He IS clinically very active and IS carrying out procedures at a very high level which are not being performed by other full-time faculty members In particular, his abilities with autogenous bone grafting are much appreciated by patients, residents, and faculty a like As a staff dentist, DR. PHAM s responsibilities are**

**primarily clinical dentistry which he carries out at a very high level with exceptional patient satisfaction He has excellent diagnostic skills and excellent clinical abilities, seeks consultations appropriately, and has the appropriate moral and ethical values that one would expect from a health care professional DR. PHAM does not give any formal lectures but has given them in the past, but he does carry out excellent one on-one teaching with the residents which they much appreciate In his role as a staff dentist, DR. PHAM consistently exceeds expectations for his performance and fully deserves a merit increase.**

> Signed "M Anthony Pogrel, DDS, M D , F R C S , F A C S
> Chair, Department of Oral and Maxillofacial Surgery

49. Contrary to DEFENDANT DR. POGREL's positive evaluation, approximately three (3) months later, on or about January 24, 2012, DEFENDANT DR. POGREL publicly humiliated DR. PHAM at the UCSF International Symposium on OMFS in front of DR. PHAM's colleagues. DEFENDANT DR. POGREL claimed in public and in the presence of Dr. Paul Hall that he and Dr. Mehran Hossaini thought that DR. PHAM should be fired, that DR. PHAM was incompetent, and that patients and staffs were supposedly complaining about DR. PHAM. DEFENDANT DR. POGREL's public announcement of private HR matters in the presence of Dr. Paul Hall was an illegal and actionable invasion of privacy. It is well established in California Law that employees enjoy a right of privacy under Article 1 Section 1 of the California Constitution in their employment affairs, and that matters which are pertaining to Human Resources are protected by this right of privacy.

50. Further, on or about February 2012, a staff member reported to DR. PHAM that DEFENDANT DR. POGREL and Dr. Hossaini instructed staff to look for and find patients who were unhappy with DR. PHAM's services in order to encourage them to file written complaints against DR. PHAM.  In addition, DEFENDANT DR. POGREL and Dr. Hossaini expected DR. PHAM to do clerical work, knowing and understanding that the time spent doing clerical work would adversely affect DR. PHAM's productivity as a surgeon. During faculty meetings, DEFENDANT DR. POGREL and Dr. Hossaini asked the faculty to enter charges and treatment plans electronically. However, since DEFENDANT POGREL had barred DR. PHAM from faculty meetings, DR. PHAM had no knowledge of this issue. As a further act of retaliation, DEFENDANT DR. POGREL never informed DR. PHAM of these changes which were announced during faculty meetings, nor did DEFENDANT DR. POGREL provide DR. PHAM with training to implement the changes. Instead, DEFENDANT DR. POGREL and Dr. Hossaini

claimed that DR. PHAM acted unprofessionally because DR. PHAM did not follow through with changes he knew nothing about.

51. DR. PHAM usually dictates a treatment plan letter on all implant and bone graft patients. The staff enters the treatment plans into the system when patients call to schedule surgery. Transferring the responsibilities from the staff to the faculty members does not represent an efficient use of time. Dr. Hossaini claimed that the faculty members should enter charges and treatment plan to avoid mistakes and "in order to improve the efficiency and safety of our patient care". This is a clear example of poor leadership and management. The leadership should direct the clinic manager to make sure that the staff members are trained to do their jobs. Instead, DEFENDANT DR. POGREL's solution for inadequately trained staff is to hire more staff or have faculty members do the staff's jobs. Apparently he wants the doctors, who can otherwise generate hundreds of dollars an hour for the department, to do clerical work for which the supporting staff has been hired. DR. PHAM believes that this makes the department inefficient.

52. In addition to the retaliation, DEFENDANT DR. POGREL often has taken credit for DR. PHAM's work. DR. PHAM performed a perfect nasal reconstruction on DEFENDANT DR. POGREL's patient (WH), but DEFENDANT DR. POGREL forbade DR. PHAM to let the patient know that the nasal reconstruction had in fact been performed by DR. PHAM, and not by DEFENDANT DR. POGREL who took credit for it. DEFENDANT DR. POGREL categorically lied to DR. PHAM that DR. PHAM is paid at the highest level of senior dentist. On or about February 2012, DR. PHAM checked with central HR and discovered that his salary was not at the highest level of senior dentist, as stipulated per his contract. DEFENDANT DR. POGREL actively concealed the facts regarding DR. PHAM's salary for several years, since October 1, 2007. When DR. PHAM pointed out to DEFENDANT DR. POGREL that he was not paid at the highest level of senior dentist as per his contract, DEFENDANT DR. POGREL again lied to DR. PHAM by claiming that DR. PHAM was at step 6 of the Senior Dentist salary range, further falsely claiming that DR. PHAM could only move up one step every two years, and that in order for DR. PHAM to be at the top of senior dentist salary range, DR. PHAM would have to have 20 years of service.

53. On February 1, 2012, Central HR confirmed to DR. PHAM that the senior dentist position is NOT a step-based position, but a salary range based position, and that DR. PHAM

was paid at the highest level of senior dentist on July 1, 2004. Since October 1, 2007, the HR department failed to adjust DR. PHAM's salary at the highest level of senior dentist.

54. Every time DR. PHAM has engaged in a salary discussion with DEFENDANT DR. POGREL, DEFENDANT DR. POGREL engaged in misrepresentations, misinformation and intimidation to force DR. PHAM to accept whatever DEFENDANT DR. POGREL dictated. DR. PHAM's appointment is based on a 50% time position as a Senior Dentist. In DR. PHAM's contract, he is to provide two (2) days of patient care. This has been the arrangement for the past 15 years. The new Department Chair, DEFENDANT DR. BAST, has tried to change this agreement. When DR. PHAM complained to DEFENDANT DR. BAST that the department has been underpaying DR. PHAM, DEFENDANT DR. BAST instead instructed DR. PHAM to come in an increased 2.5 days in order to maintain DR. PHAM's benefits. "Half time" is two clinic days and "fulltime" is 4 clinic days. DR. PHAM's clinic income from two (2) clinic days a week is more than enough to cover DR. PHAM's salary and benefits, as evidenced by the department compensation plan performance.

## RETALIATION BY DEFENDANT DR. BRIAN BAST

55. DR. PHAM met with DEFENDANT DR. BAST in his office on Wednesday, January 27, 2016, in order to inform him that the department has been underpaying him even though he brings in the highest clinical income in the department. DR. PHAM asked DEFENDANT DR. BAST to honor the contract DR. PHAM has had with the department since July 1, 2004. The agreement DR. PHAM had with the department is to provide 2 days of patient care. In return the department will pay him 50% of the highest senior dentist salary scale with full benefits (medical, dental, vision, paid vacation, sick leave), cover his expenses for four (4) meetings (up to $16,000), pay his dues (medical, dental licenses, AAOMS & Cal AOMS) and subscription costs (Esthetic Surgery Journal, OMFS Clinics of NA, Facial Plastic Surgery of NA). DR. PHAM's salary, benefits and expenses are paid by the clinical income DR. PHAM generates from patient care.

56. In a letter dated February 17, 2017, DEFENDANT DR. BAST threatened to reduce DR. PHAM's appointment schedule as follows:

"…effective March 24, 2017, in addition to your Monday and Wednesday time in the OMFS clinic, you will also provide clinical service at the OMFSA Faculty clinic, Suite D1201, on Friday from 1pm to 5pm. You are to be generally available as the clinic requires, although as an exempt employee, greater emphasis is placed on meeting the responsibilities assigned to your position…

If, by March 24, 2017, you fail to work your full 50% appointment assigned schedule as directed and you continue to only maintain your Monday and Wednesday clinic service, your appointment will be reduced to 40% effective March 27, 2017."

57. Despite DR. PHAM working two days of direct patient care a week and a half-day of administration duties (fulfilling a 50% work appointment), as well as providing additional off-hour contact information for his patients, on April 4, 2017, DR. PHAM received a letter from Cecelia Lucero, Human Resource Generalist of UCSF Human Resources Department stating the flowing changes to DR. PHAM's appointment:

'This letter is to notify you that as previously informed, your Senior Dentist (Title Code 0774) position is being reduced from 50% to 40% effective March 27, 2017.
…eligible employees whose appointment is reduced below 50% no longer accrue vacation or sick leave. Therefore, you will stop accruing vacation and sick leave hours as of March 27, 2017."

58. On May 18, 2016, Dr. Derek Park, Dr. Chirag Patel and DR. PHAM met with DEFENDANT DR. BAST and raised serious concerns about substandard patient care being rendered by a white female surgeon, Dr. P. They expressed to DEFENDANT DR. BAST that Oral Surgeons are being scrutinized for their ability to safely provide anesthesia and operate simultaneously after two anesthetic related deaths occurred in the last two (2) years in the San Francisco Bay Area. They expressed to DEFENDANT DR. BAST that oral surgeons must police themselves and protect the public from incompetent surgeons.

59. On March 23, 2016, surgeon Dr. P. was scheduled for an onsite General Anesthesia Evaluation and Examination, but Dr. P. was unable to insert the IV and the patient went into an acute asthmatic attack, necessitating the patient to be transferred to the emergency department for treatment. Dr. P. tried to coerce a resident to put the IV in for this patient, and he refused because this procedure was an examination. DR. PHAM and the other doctors related all these facts to DEFENDANT DR. BAST. Also, during the meeting with DEFENDANT DR.

BAST, DR. PHAM and the other doctors reported, complained and informed DEFENDANT DR. BAST of the following facts: that Dr. P. should not performing general anesthesia and surgery on patients because she was unable to place the IV. They reported that Dr. P. demonstrated on numerous occasions that she did not have the skill to place an IV and had to ask other providers to place an IV on her patients. General Anesthesia ("GA") permits are only granted to providers who can demonstrate that they can safely put patients to sleep and operate at the same time. During this examination, Dr. P. demonstrated that she did NOT have the ability to place an IV on a conscious patient with normal blood pressure, let alone an unconscious patient with low blood pressure. DR. PHAM and the other doctors pointed out to DEFENDANT DR. BAST that this examination case demonstrated her lack of professional judgment in regard to which patients can be safely put to sleep and operate at the same. She failed to select the right patient for her GA exam. DR. PHAM explained to DEFENDANT DR. BAST that this was the first time in his 22 years in the OMFS department that a GA evaluation had to be aborted because the provider did not possess the skills to place an IV and did not have the knowledge to select a patient who can safely be put to sleep and operate at the same time. After this aborted case, Dr. P. then sought out only examiners she knew personally. On May 16, 2016, Dr. P. had to perform a GA onsite evaluation with her former supervising surgeons, Dr. Rebeka Silva and Dr. Thad Connelly. Dr. P. struggled to place the IV on her patient. Finally she got it in after 45 minutes. It took her nearly an hour to take out a single tooth, an extraction which only should have taken 5 to 10 minutes to complete.

60. DR. PHAM also complained to DEFENDANT DR. BAST that he should have vetted Dr. P. better before he hired her. DR. PHAM further explained that she was one of the worst residents who could neither perform surgery nor place an IV. DR. PHAM added that she had no business training residents, when many of the residents provided much better patient care than she did. DR. PHAM suggested to DEFENDANT DR. BAST that he might want to contact her prior boss about incidents of substandard patient care she had provided at her prior job. DR. PHAM explained that in one case, she fractured a patient's jaw after taking out a tooth. She did not know how to fix the fractured jaw and had to refer it to Dr. Carr, a dentist two years her

junior in residency training, to fix the patient's fractured jaw.  The treatment of a jaw fracture is a very basic procedure that every oral surgeon should know how to perform, yet she does not.  In another incident at her prior employment, she tried to take out a wisdom tooth but could not manage to take it out and had to call a surgeon from private practice to complete the case.

61.      In another case at UCSF, Dr. P. also attempted to take out a wisdom tooth but was not able to take it out, and after approximately two (2) hours, she called Dr. Carr who had to complete the case.  In a separate incident, she attempted to take out a bicuspid but could not complete it, and a resident had to take the tooth out for her.   DR. PHAM informed DEFENDANT DR. BAST of the above incidents and told him that she was a liability for the University and put the patients at risk.  DEFENDANT DR. BAST informed DR. PHAM that he hired her to oversee the students' cases and to take out teeth on oral cancer patients.  DR. PHAM replied that in that case, DEFENDANT DR. BAST was putting these unfortunate patients in double jeopardy, first of dying from their cancer diagnosis; and then being at high risk of poor outcomes by allowing Dr. P. to perform their extractions.

62.      DEFENDANT DR. BAST expressed antagonism toward the Doctors complaining about Dr. P., and he exhibited extreme hostility against DR. PHAM for bring these patient safety issues to his attention.  Despite all these serious incidents, DEFENDANT DR. BAST insisted that she was a good surgeon, falsely accusing DR. PHAM of orchestrating all these negative complaints against her.

63.      DEFENDANT DR. BAST, and each DEFENDANT, retaliated against DR. PHAM after that meeting on May 18, 2016 with Dr. Derek Park, Dr. Chirag Patel and DR. PHAM regarding their fears and concerns about substandard patient care being rendered by Dr. P.

64.      DEFENDANT DR. BAST had informed DR. PHAM in March, 2016 that he would restore DR. PHAM's salary back up to the highest level of the senior dentist pay scale and that DR. PHAM would receive a retroactive pay raise. DEFENDANT DR. BAST has failed to retroactively increase DR. PHAM's pay as promised. Instead, on August 12, 2016, DEFENDANT UCSF notified and informed DR. PHAM that DEFENDANT UCSF is

investigating him for "acts of serious misconduct in the violation of the UC Non-discrimination

and Affirmative Action Policy." The allegations the University made against DR. PHAM are as

follows:

> "You have repeatedly engaged in hostile behavior toward Dr. [J. P]. based on her
> gender, including publicly criticizing her to faculty, staff, and students, spreading
> false rumors about her to faculty, staff and students, and discrediting her professional
> competence to faculty, staff and students; and
> You have colluded with faculty, staff and/or residents to limits Dr.[ P's] career
> opportunities, reduce her ability to generate revenue, and/or force her out of the
> Department of Oral Maxillofacial Surgery ("OMFS") because of her gender,
> including encouraging faculty, staff and residents not to assist or work with Dr.[ P.]
> and making false claims to Dr. Brian Bast and others that Dr. P. is incompetent."

65. DEFENDANTS, and each of them, know these accusations are completely untrue.

66. At the time, DR. PHAM was a 50% part-time faculty and staff dentist. He did not hold

any supervisorial role in the department.  He did not have the authority to, nor did he, assign

residents or staff to their schedules. Dr. P's incompetence is well known and documented in the

department. All the faculty and staff know that she can't place an IV, can't reliably take out

teeth, and is relying on the residents to do her work for her.  She has cancelled cases when the

residents are not available to do her surgeries for her.

67. DEFENDANTS, and each of them, know that patient safety is a matter of public concern

and a concern of all private citizens. DR. PHAM, as a private citizen, reported Dr. P's

substandard patients' care and treatment to DEFENDANTS, and rather than taking steps to

protect the patients, DEFENDANTS, and each of them, retaliated and discriminated against DR.

PHAM, in violation of state and federal law.

## DISCRIMINATION

68. DEFENDANTS, and each of them, treat DR. PHAM differently and discriminatorily on

the basis of his national origin, Vietnamese, gender, and because he engaged in protected

activity, including complaining about substandard patient care, patient safety and the conditions

of the dental school. DR. PHAM is the only faculty member of Vietnamese National Origin.

DEFENDANTS have treated the other faculty members of American or different national origin

more favorably than DR. PHAM, without any business or legitimate purpose. For example,

DEFENDANT POGREL has not engaged in conduct such as assault towards any other faculty member, nor has he denied any other faculty member equal pay. DEFENDANTS treat a female faculty member more favorably than DR. PHAM, excusing her incompetent patient care and treatment, while publicly but falsely criticizing DR. PHAM's care and treatment of patients. This is illegal discrimination on the basis of gender.

69. DR. PHAM, Dr. Derek Park and Dr. Chirag Patel complained to DEFENDANT DR. BAST about one faculty member's incompetence and substandard patient care and treatment. Rather than taking corrective actions against this faculty member to improve patient care and treatment for the protection of patients, DEFENDANTS launched a barrage of retaliating actions against DR. PHAM, including further denial of his request for equal pay commensurate with the pay of other faculty members, and changed DR. PHAM's employment contract in the middle of the year.

## FEDERAL CLAIMS

### *NOTICE OF ILLEGAL WAGE SCHEMES*

### FIRST CAUSE OF ACTION
FEDERAL FAIR STANDARD LABOR ACT:
RETALIATION UNDER FLSA SECTION 215(A)(3)
**(42 U.S.C. § 1983)**
**(Against DR. TONY POGREL,** *In His Individual Capacity,*
**DR. BRIAN BAST**, *In His Individual Capacity***)**

70. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

71. DEFENDANTS, and each of them, violated, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. DEFENDANTS, and each of them, engaged in retaliation against DR. PHAM, violating Section 215(a)(3) of the FLSA, which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3).

72. For many years, and specifically since May 18, 2016, DR. PHAM has complained about unequal pay and about an incompetent white female faculty member getting accelerated promotion and pay increase after being on staff full time for less than 12 months. He has demanded a pay raise of the same amounts and at the same rate of increase as other faculty members. DEFENDANTS have repeatedly denied his request, falsely representing that he was not entitled to such increase as per the policy of the university.

73. On August 1, 2016, DEFENDANT DR. BAST/UCSF again vehemently disputed and objected to DR. PHAM's assertion that he was entitled to equal pay, commensurate with other faculty members.   DEFENDANT DR. BAST refused to provide a retroactive pay raise but agreed to DR. PHAM moving back up to the highest level of the senior dentist pay scale. DR. PHAM had complained on an ongoing basis regarding Defendant UCSF'S failure and refusal to pay wages for his dental services in the same proportionate salary increases as other faculty members. Defendant UCSF'S continuing refusals to pay DR. PHAM equal pay were acts done in direct retaliation for his complaining about non-payment of wages and insistence on equal and proportionate pay.

74. DEFENDANTS, and each of them, violated FLSA by retaliating against DR. PHAM, even if he cannot recover for other claims under FLSA. Section 215(a)(3) prohibits employers from retaliating against employees who file a complaint "under or related to this chapter." 29 U.S.C. § 215(a)(3). The statute does not require the employee's complaint to be meritorious, or even to survive judgment on the pleadings. In fact, the inclusion of both "under" and "related to" suggest that even complaints that do not squarely fall "under" the FLSA may provide an adequate ground for a retaliation claim under Section 215(a)(3). Plaintiff's retaliation cause of action qualifies under Section 215(a)(3) in that it expressly identifies the FLSA as the authority supporting relief. Regardless of whether the facts alleged supported that relief (or whether the Plaintiff had standing to assert the particular claim alleged), Plaintiff's first cause of action is clearly "under or related to [the FLSA]." Hence, DEFENDANTS, and each of them, are liable to Plaintiff for retaliation in violation of FLSA.

75. As a direct and legal result of DEFENDANTS' conduct as set forth herein, DR. PHAM has suffered and continues to suffer substantial economic and non-economic damage in an amount according to proof.

76. Wherefore, Plaintiff prays for judgment as more fully set forth below.

**SECOND CAUSE OF ACTION**
UNEQUAL PAY VIOLATION FEDERAL EQUAL PAY ACT
**(42 U.S.C. § 1983)**
**(Against DR. TONY POGREL,** *In His Individual Capacity,*
**DR. BRIAN BAST**, *In His Individual Capacity***)**

77. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

78. United States Federal Law, "The Equal Pay Act of 1963" amended the Fair Labor Standards Act: 29 U.S. C Section 206. (d) prohibition of sex discrimination in pay and requires equal pay for equal work: (d) (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex:

79. DEFENDANTS, and each of them, are violating DR. PHAM's rights as a man by paying him less than his female counterparts. This conduct is a violation under The Equal Pay Act of 1963 of the Fair Labor Standards Act (FLSA); a violation of FEHA; and a violation of California Labor Code § 1197.5. The law prohibits employers from paying unequal wages, based on gender. Men and women employed in the same establishment, doing substantially equal work must be paid the same wages.  DR. PHAM is a Senior Dentist, with more seniority than similarly situated female dentists at UCSF in the Division of Dentistry; however, as a male,

DEFENDANTS pay him less wages than the women with lesser qualifications and experience. On January 29,2009, President Obama acknowledged the importance of equal pay in our society: "It is fitting that with the very first bill I sign — the Lilly Ledbetter Fair Pay Act — we are upholding one of this nation's first principles: that we are all created equal and each deserve a chance to pursue our own version of happiness". Under the Ledbetter Fair Pay Act, each pay check which was unequal to similarly situated female dentists starts to run a new statute of limitations. Consequently, Defendant UCSF is liable for all of the sums due for the unequal paychecks from the beginning of this discriminatory practice. Defendant UCSF'S conduct of denying DR. PHAM equal pay is an adverse employment action on the basis of DR. PHAM's gender, male.

80. Defendant UCSF and its HR Department do not give information to employees about the salaries of the other employees. DR. PHAM did not know the salaries. Recently, in 2016, DR. PHAM discovered the unequal pay. The table shows the salaries and tenure with UCSF.

81. Upon discovering this violation of law, DR. PHAM felt unappreciated and humiliated. He felt nauseous, with a big knot in the bottom of his stomach; he was extremely upset, with a feeling of betrayal, and became so nervous, shaky and shocked that he was forced to sit down for composure. DR. PHAM experienced severe mental and emotional distress when he discovered this blatant discrimination, especially the gender discrimination, and the fact that he was not treated equally to other dentists. He felt that neither he as a person, as a human being, nor his hard work were valued. He felt that the Administration at UCSF does not care how hard he works, how committed he is to his patients, the community, his colleagues and his staff. The productivity data since 2001 show that DR. PHAM has generated the most income to UCSF. DR. PHAM implemented important, novel and beneficial procedures for UCSF. Defendant UCSF did not care about DR. PHAM's rights, feelings, or his productivity. The evidence shows that Defendant UCSF engaged in illegal discrimination, including discrimination in pay, gender and national origin.

82. Defendant UCSF treated DR. PHAM disparately, differently, discriminatorily in compensation or in terms, conditions, or privileges of employment. Such discrimination was

motivated by DR. PHAM's national origin and gender, male. DR. PHAM's gender was a "motivating reason" for DEFENDANTS ' illegal and unlawful conduct because his gender is one of the reasons that contributed to the DEFENDANTS ' decision to take adverse action, even though other reasons also may have contributed to DEFENDANTS ' decisions.

83. Wherefore, Plaintiff prays for judgment as more fully set forth below.

## THIRD CAUSE OF ACTION
### DEPRIVATION OF FIRST AMENDMENT
### RIGHT OF FREE PUBLIC CONCERN SPEECH
### IN VIOLATION OF 42 U.S.C. 1983
### (42 U.S.C. § 1983)
### (Against DR. TONY POGREL, *In His Individual Capacity,*
### DR. BRIAN BAST, *In His Individual Capacity*)

84. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

85. DEFENDANTS, and each of them, retaliated against DR. PHAM because he exercised his First Amendment Right of Free Speech regarding public concern. Specifically, DR. PHAM complained to DEFENDANTS, their managers, agents and those in authority that a female dentist was engaging in conduct that was threatening patient care, treatment and safety. DR. PHAM spoke as a private citizen and a concerned dental professional. DR. PHAM's duties do not include reporting substandard patient care to management. As a direct result of DR. PHAM's complaints of unsafe patient care, DEFENDANTS, and each of them, accused DR. PHAM of gender harassment towards this dentist, in full knowledge that other residents and faculty members had also voiced the same alarm about that dentist's substandard patient care and treatment. DEFENDANTS engaged in adverse employment action, causing DR. PHAM to suffer certain harms, injuries, and to be forced to endure unpleasant employment conditions and deprivation of employment benefits. DEFENDANTS retaliated against DR. PHAM for engaging in speech protected by the First Amendment. That speech, he alleges, consists of protesting that the DEFENDANTS' blanket policy of failing to take corrective action to protect vulnerable, unwarned patients of negligent patient care.

*86.* "A public employer may not [take adverse action such as] discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *LeFande v. D.C.,* 613 F.3d 1155, 1158 (D.C. Cir. 2010) To determine whether such a violation has come to pass, the  Ninth Circuit follows the D.C. Circuit's four-part inquiry: "First, the public employee must have spoken as a citizen on a matter of public concern. Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern. Third, the employee must show that his speech was a substantial or motivating factor in prompting the retaliatory or punitive act. Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech."

87. *Bowie v. Maddox*, 642 F.3d 1122, 1133 (D.C. Cir. 2011) (quoting *Wilburn v Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007)). "The first two inquiries are questions of law, while the last two are questions of fact usually left to the jury." *Thompson*, 428 F.3d at 286. At the pleading stage, however, the Complaint must still "allege[] sufficient facts for a jury to conclude" that each factor has been satisfied, see id., giving Plaintiff the benefit of all reasonable inferences. See *Sparrow*, 216 F.3d at 1113.

88. The first prong of the test "really imposes two requirements – that the employee speak 'as a citizen' and that the speech be 'on a matter of public concern.'" *Hawkins v. D.C.*, 923 F. Supp. 2d 128, 137 (D.D.C. 2013). The "matter of public concern" requirement should be addressed first because "[i]f the speech is not on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction.'" *LeFande*, 613 F.3d at 1159) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

89. Clearly, DR. PHAM's speech regarding patient care, treatment and safety, and his speech complaining about discrimination and unpaid wages, all are matters of public concern. The California Labor Code reflects the public policy and public concern that the community is harmed when an employer fails to pay earned wages when due. Likewise, the FEHA expressly declares the public policy of California that employees work in a discrimination free

environment.   Additionally, California Health and Safety Code Section 1278.5 encourages medical providers, such as DR. PHAM, to speak up to protect patients when they witness negligent conduct that harms or threatens to harm patients. DR. PHAM's speech was a matter of public concern, not a matter of mere "workplace grievance[s]".The Ninth Circuit has endorsed the D.C. Circuit position refuting "the proposition that a personnel matter per se cannot be a matter of public concern." *LeFande*, 613 F.3d at 1161. Rather, speech "relates to a matter of public concern if it is 'of political, social, or other concern to the community.'" Id. at 1159 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). As an example, were the head of a city department "to assert the power to fire, without process, all [its subordinate] officers, paid and unpaid, that action would 'be fairly considered as relating to [a] matter of political, social, or other concern to the community' . . . although it relates to a 'personnel matter.'" Id. at 1161.

90. DR. PHAM is a concerned faculty member, teacher, and compassionate medical provider, who has taken an oath to "First Do No Harm". DR. PHAM's speech complaining about improper patient care and negligent practices that threatened harm to patients was speech on matters of public concern.

91. The next question in the analysis is whether DR. PHAM spoke "as a citizen" or, instead, "pursuant to his official duties." *Garcetti,* 547 U.S. at 421. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. (district attorney did not speak as private citizen when he wrote and filed memorandum that was "part of what he, as a calendar deputy, was employed to do"). The DEFENDANTS, and each of them, cannot argue, with any credibility, that DR. PHAM's duties as a dentist did not in any way include speaking and complaining about negligent patient care, treatment and safety or discrimination in the work place. Indeed, the very fact that DEFENDANTS have retaliated against DR. PHAM with adverse employment actions such as falsely accusing him of gender harassment towards the negligent faculty member is evidence that DEFENDANTS do not contend that DR. PHAM's duties include speaking publicly with complaints about substandard patient care and treatment. Likewise, his duties did not include his

speech protesting discrimination in pay. DR. PHAM's speech was that of a concerned private citizen, and inures to the benefit of, and was on behalf of, a class of members in society, namely patients of dental and surgery care and treatment.

92. The second prong of the four-part inquiry requires the Court to consider whether UCSF's "interest in promoting the efficiency of the public services it performs through its employees outweighs DR. PHAM's interest, as a citizen, in commenting upon matters of public concern." *Bowie*, 642 F.3d at 1133. UCSF might argue it has an "interest" in promoting a harmonious work environment among faculty members and employees and can require DR. PHAM not to complain about substandard patient care and treatment or discrimination in pay. Even if Defendant UCSF asserts this position, their interest in maintaining a harmonious work environment cannot and does not outweigh DR. PHAM's interest, as a citizen, in commenting upon matters of public concern such as patient care, safety and treatment, as well as matters of discrimination in the work place. Defendant UCSF's interest, whatever it may be, has no bearing on DR. PHAM's First Amendment Right and interest as a citizen "in commenting upon matters of public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (emphasis added). UCSF interest as just as it was in *Pickering, supra*: "Here, the employer's side of the Pickering scale is entirely empty," *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). DEFENDANTS ' actions in retaliating against DR. PHAM by falsely accusing him of gender harassment and continuing to deny him equal pay proves that his "speech was a substantial or motivating factor in prompting the retaliatory or punitive act[s]." *Bowie,* 642 F.3d at 1133.

93. Finally, DEFENDANTS will be unable to credibly argue that they would have reached the same decision of accusing DR. PHAM of gender harassment or deny his equal pay in the absence of his protected speech protesting these violations. Thus, DR. PHAM asserts a sustainable cause of action for retaliation for exercising his First Amendment Right to speak about matters of public concern.

94. DEFENDANTS' retaliation against DR. PHAM for speaking up and protesting the violations of his constitutional rights is a violation of his right of free speech in the public interest. DEFENDANTS' illegal conduct entitles DR. PHAM to all damages incurred as

1   hereinabove alleged.

2     95. Wherefore, Plaintiff prays for judgment as more fully set forth below.

**FOURTH CAUSE OF ACTION**
CIVIL RIGHTS VIOLATION
DISCRIMINATION IN VIOLATION OF
TITLE VII - RETALIATION
**(42 U.S.C. § 1983)**
**(Against DR. TONY POGREL,** *In His Individual Capacity,*
**DR. BRIAN BAST**, *In His Individual Capacity***)**

    96. DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

    97. Employment discrimination law under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981(a) makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to be a protected activity, the plaintiff's opposition must have been directed toward a discriminatory act by an employer or an agent of an employer. *See Silver v. KCA, Inc.*, 586 F.2d 138, 140-42 (9th Cir.1978) (holding that employee's opposition to a racially discriminatory act of a co-employee cannot be the basis for a retaliation action);*E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013-14 (9th Cir.1983) (holding that employee's objections to discriminatory practices by the warehouse personnel manager, on facts presented, constituted objections to discriminatory actions of the employer).

    98. DR. PHAM engaged in protected activity by complaining about discrimination against him, not a co-employee, in pay and discrimination against him for complaining about substandard patient care, safety and treatment.

    99. Defendant UCSF, its managing agents and employees, subjected DR. PHAM to adverse employment actions by falsely accusing him of gender harassment, excluding him from faculty meetings, denying him equal pay, and other adverse employment actions.

100.     Defendant UCSF subjected DR. PHAM to the adverse employment actions because of his participation in protected activity.  Defendant UCSF subjected DR. PHAM to these adverse employment actions because of his participation in protected activity, and the adverse employment action would not have occurred but for DR. PHAM's participation in protected activity.

101.     As shown by the facts as alleged herein, Defendant UCSF retaliated by treating DR. PHAM disparately, differently, and discriminatorily in compensation, terms, conditions, and privileges of employment. Such retaliation, including discrimination, was motivated by DR. PHAM's nationality, speech and participation in protected activity. DR. PHAM's nationality and his public-concerned speech were "motivating reasons" for Defendant's illegal and unlawful conduct because his nationality is one of the reasons that contributed to the DEFENDANTS ' decision to take certain adverse action, even though other reasons also may have contributed to DEFENDANTS ' decisions.

102.     Wherefore, Plaintiff prays for judgment as more fully set forth below.

**FIFTH CAUSE OF ACTION**
DISCRIMINATION IN VIOLATION OF
TITLE VII - DISPARATE TREATMENT
**(42 U.S.C. § 1983)**
**(Against DR. TONY POGREL,** *In His Individual Capacity,*
**DR. BRIAN BAST**, *In His Individual Capacity*)

103.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

104.     DEFENDANTS, and each of them, treated DR. PHAM differently, discriminatorily, disparately on the basis of his gender, male, national origin and race, and because he engaged in statutorily protected activity.

105.     The plaintiff may prevail by showing that the discrimination was "a motivating factor" in the employment decision even though other factors also motivated the decision. Washington v. Garrett, 10 F.3d 1421, 1433 n.15 (9th Cir.1993); see also Costa v. Desert Palace, Inc., 299 F.3d 838, 853-59 (9th Cir.2002) (en banc), aff'd, 539 U.S. 90 (2003) ("Put simply, the

plaintiff in any Title VII case may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played 'a motivating factor.'"); see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015) (explaining that phrase "because of" "typically imports, at a minimum, the traditional standard of but-for causation," but Title VII relaxes this standard "to prohibit even making a protected characteristic a 'motivating factor' in an employment decision").

106.     DEFENDANT UCSF's actions of discrimination and retaliation against DR. PHAM have caused and continue to cause him substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

107.     Wherefore, Plaintiff prays for judgment as more fully set forth below.

### SIXTH CAUSE OF ACTION
DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981a
**(42 U.S.C. § 1983)**
**(Against DR. TONY POGREL,** *In His Individual Capacity,*
**DR. BRIAN BAST**, *In His Individual Capacity*)

108.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

109.     Federal Civil Right Law 42 U.S.C. § 1981(a) Statement of equal rights provides:
**"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security   of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses,  and exactions of every kind, and to no other."** (b) "Make and enforce contracts" defined  for purposes of this section, the term "make and enforce  contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits,  privileges, terms, and  conditions  of  the  contractual  relationship.  (c)  Protection  against impairment. The  rights  protected  by  this  section  are  protected  against impairment by nongovernmental discrimination and impairment under color of State law."

110.     DEFENDANTS, and each of them, treated DR. PHAM differently, discriminatorily, disparately, denying him his civil right to "make and enforce contracts, … and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." DEFENDANT UCSF denied DR. PHAM, Vietnamese, and National Origin of Vietnam, the same contract benefits, terms and conditions of employment as that enjoyed by "white citizens" and other non-Vietnamese citizens.

111.     DEFENDANTS ' actions of discrimination and retaliation against DR. PHAM in the terms, conditions and benefits of his contract have caused and continue to cause him substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

112.     Wherefore, Plaintiff prays for judgment as more fully set forth below.

<strong><u>SEVENTH CAUSE OF ACTION</u></strong><br>RETALIATION IN VIOLATION OF CIVIL RIGHTS<br><strong>(42 U.S.C. § 1983)</strong><br><strong>(Against DR. TONY POGREL, <em>In His Individual Capacity</em>,<br>DR. BRIAN BAST</strong>, <strong><em>In His Individual Capacity</em></strong><strong>)</strong>

113.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

114.     Federal Civil Rights Law 42. U.S.C. §1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

115.     DEFENDANTS' actions and failures, as alleged, constitute a pattern, practice, and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C § 1983.

DEFENDANTS, while acting under color of state authority and law, wrongfully and intentionally discriminated and retaliated against DR. PHAM because he exercised his First Amendment right under the United States Constitution of Free Speech by making a complaint to his employer, HR and to his supervisor, DEFENDANT DR. BAST, concerning patient care and safety at UCSF.

116.     DEFENDANTS' conduct, as set forth above, constitutes violations, under color of law, of Plaintiff's rights, privileges, and immunities guaranteed to him by the First Amendment of the United Stated Constitution of free speech and to petition the government for redress of grievances. Further, DEFENDANTS' conduct violated DR. PHAM's Fourteenth Amendment right of Liberty by retaliating against him and thereby by restricting and curtailing his right to be free of unconstitutional retaliatory conduct.

117.     DEFENDANTS' actions have caused and continue to cause PLAINTIFF substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

118.     As to DEFENDANTS DR. POGREL and DR. BAST, the acts of these DEFENDANTS, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental anguish, anxiety, and distress.  DEFENDANTS' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure, constituting oppression, fraud, and malice under California Civil Code §3294, entitling Plaintiff to punitive damages against DEFENDANT DR. POGREL and DEFENDANT DR. BAST only.

119.     Wherefore, Plaintiff prays for judgment as more fully set forth below.

**EIGHTH CAUSE OF ACTION**
DEPRIVATION OF PROPERTY AND DUE PROCESS
IN VIOLATION OF FOURTEENTH AMENDMENT
42 U.S.C. § 1983
COMPLAINT FOR DAMAGES
34

**(Against Defendants, Dr. Anthony Pogrel and Dr. Brian Bast
in their Individual Capacity)**

120.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

121.     DEFENDANTS Dr. Pogrel and Dr. Bast are the final authority and final decision makers for DEFENDANT UCSF.  DEFENDANT DR. BAST and DEFENDANT DR. POGREL, while acting under color of state authority and law, wrongfully and intentionally deprived DR. PHAM of his wages, his property, in violation of DR. PHAM's Fourteenth Amendment Rights under the United States Constitution.

122.     DEFENDANTS' conduct, as set forth above, constitutes violations, under color of law, of Plaintiff's rights, privileges, and immunities guaranteed to him by the Fourteenth Amendment of the United Stated Constitution. Further, DEFENDANTS' conduct violated DR. PHAM's Fourteenth Amendment right of Due Process by depriving DR. PHAM of his property, that is, his wages, without due process of law.

123.     DEFENDANTS' actions have caused and continue to cause PLAINTIFF substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

124.     As to DEFENDANT DR. POGREL and DEFENDANT DR. BAST only, the acts of these DEFENDANTS, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental anguish, anxiety, and distress.  DEFENDANTS' acts were done in conscious disregard of the risk of severe emotional harm to PLAINTIFF and with the intent to injure, constituting oppression, fraud, and  malice under California Civil Code §3294, entitling PLAINTIFF to punitive damages against DEFENDANT DR. POGREL and DEFENDANT DR. BAST. DEFENDANT DR. BAST originally agreed to give DR. PHAM a retroactive pay raise but refused to give a retroactive pay raise as an act of retaliation after Drs. Park, Patel and DR.

PHAM complained about the incompetence of the white female surgeon.

125.     Wherefore, Plaintiff prays for judgment as more fully set forth below.

**NINTH CAUSE OF ACTION**
CIVIL RIGHTS VIOLATION
DISCRIMINATION IN VIOLATION OF
TITLE VII HOSTILE WORK ENVIRONMENT
**(42 U.S.C. § 1983)**
**(Against DR. TONY POGREL,** *In His Individual Capacity,*
**DR. BRIAN BAST**, *In His Individual Capacity***)**

126.     DR. PHAM incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

127.     DEFENDANT DR. POGREL has created a hostile environment by engaging in severe, prolonged, and pervasive conduct. Since 2005 to date, DEFENDANT DR. POGREL has implemented a policy to ban DR. PHAM from faculty meetings which all other surgeons attend. DEFENDANT DR. POGREL has physically assaulted DR. PHAM by pushing him out of his office during a salary negotiation in 2005.  DEFENDANT DR. POGREL yelled at DR. PHAM in public at UCSF International Symposium in Oral & Maxillofacial Surgery, falsely accusing DR. PHAM of incompetence, stating that DR. PHAM "should be fired" in front of other surgeon.

128.     DEFENDANT DR. POGREL's hostile treatment of DR. PHAM has continued and is now carried out by the new chairman, DEFENDANT DR. BAST.  DEFENDANT DR. BAST has unilaterally, without DR. PHAM's consent or agreement, changed DR. PHAM's contract of 15 years, increasing DR. PHAM's work days from 2 days per week to 2.5 days per week. Neither DEFENDANT DR. POGREL nor DEFENDANT DR. BAST has treated any other faculty member in the same adverse and hostile manner in which they have treated DR. PHAM.

129.     DEFENDANT DR. POGREL's additional acts of hostility include, but are not limited to, refusing to give DR. PHAM credit for nasal reconstruction surgery on his patient WH. DEFENDANT DR. POGREL had never performed a nasal reconstructive surgery like this

before; DEFENDANT DR. POGREL opened DR. PHAM's confidential mail from the dental board; DEFENDANT DR. POGREL required DR. PHAM to provide extra documentation to obtain reimbursement for travel expenses; DEFENDANT DR. POGREL undermined DR. PHAM's ability to do surgery;  DEFENDANT DR. POGREL publicly criticized DR. PHAM's reconstructive technique-- resection of tumor and immediate reconstruction with hip graft for ameloblastoma of patient R. N.,  claiming that the procedure would not work.  The procedure went extremely well and the patient's tumor was resected and reconstructed in one operation instead of two (2) separate operations.

130.    Likewise, DEFENDANT DR. POGREL publicly criticized DR. PHAM's lip transplant surgery on a cleft palate patient, transplanting the lower lip to the upper lip, and when it was time to divide the lower lip to the upper lip, DEFENDANT DR. POGREL told the resident that DR. PHAM was dividing the lip too early, and the procedure would fail. DEFENDANT DR. POGREL made other public false criticisms of DR. PHAM's surgeries, including an Intraoral Vertical Ramus Osteotomy. Postoperatively DEFENDANT DR. POGREL told the resident that the position of the proximal segment was too lateral and the patient needed to be re-operated. His criticism was proven invalid. These prolonged, pervasive and public false criticisms hurt and humiliated DR. PHAM and caused him severe mental and emotional distress, pain, misery and suffering. DEFENDANT DR. POGREL singled out DR. PHAM, the only Vietnamese surgeon, for this hostile and abusive treatment, which DEFENDANT DR. POGREL inflicted on DR. PHAM continually since 2005 to the present.

131.    Wherefore, Plaintiff prays for judgment as more fully set forth below.

## **PUNITIVE DAMAGES**

132. DEFENDANTS DR. POGREL and DR. BAST'S acts, as alleged herein, as to all causes of action, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure DR. PHAM and to cause him mental anguish, anxiety, and distress. DEFENDANTS ' acts were done in conscious disregard of the risk of severe emotional harm to

Plaintiff and with the intent to injure, constituting oppression, fraud, and malice under California Civil Code §3294, entitling Plaintiff to punitive damages against individual DEFENDANTS only.

## PRAYER FOR RELIEF

133.    Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

1.    For general damages in an amount according to proof;

2.    For special damages in an amount according to proof;

3.    For prejudgment interest in an amount according to proof;

4.    For reasonable attorney's fees and cost of suit therein required by statute;

5.    For punitive damages in the amount of $3,000,000.00 each as to DEFENDANT DR. POGREL and DEFENDANT DR. BAST, or 9% of the net worth of each Defendant, whichever is greater.

6.    For statutory penalties and any other statutory relief;

7.    For $3,000,000.00 in compensatory damages, including physical injuries creating mental and emotional misery;

8.    For all sums due for back pay, plus interest.

9.    Interest at the legal rate of 10% per annum from each weekly payment of wages due to Plaintiff

10.    Restitution and injunctive relief for Plaintiff

11.    A written contract specifying that a 50% Senior Dentist constitutes two clinic days a week, with benefits to be covered by clinical income generated.

12.    Any excess clinical revenues to be set aside for professional travel, CEs and equipment

13.    For such other and further relief as the court may deem proper;

14.    Plaintiff hereby demands a trial by jury.

## JURY TRIAL DEMANDED

DATED: July 24, 2017

RESPECTFULLY SUBMITTED
LAW OFFICES OF BONNER & BONNER

*/s/* Charles A. Bonner
ATTORNEY FOR PLAINTIFF