UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIEU PHAM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BRIAN BAST, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-04194-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. No. 28 |

## INTRODUCTION

Plaintiff Hieu Pham, a Senior Staff Dentist in The University of California, San Francisco ("the University") Department of Oral and Maxillofacial Surgery ("OMFS"), brings this action against The Regents of the University of California ("the University") and two supervisors, Dr. Anthony Pogrel and Dr. Brian Bast (the "individual defendants"). Dr. Pham alleges that he was deprived of earned bonuses and pay raises because of his national origin and gender, and/or because he complained about his compensation and reported another surgeon's substandard patient care.

The defendants move to dismiss and strike certain state law claims asserted in Pham's Third Amended Consolidated Complaint (TAC): the sixteenth cause of action (breach of covenant of good faith and fair dealing); the seventeenth cause of action (constructive trust-fiduciary duty); the nineteenth cause of action (bad faith breach of contract/quantum meruit); the twentieth cause of action (negligent hiring, supervision, training); the twenty-second cause of action (Labor Code violations sections 221, 223); the twenty-third cause of action (common count wages due); the twenty–fourth cause of action (negligent misrepresentation); the twenty-fifth cause of action (negligence); the twenty-sixth cause of action for interest on unpaid wages; and, the claim for punitive damages. For the reasons discussed below, the motion to dismiss the identified causes of action is GRANTED and the motion to strike the request for punitive damages is DENIED.

**BACKGROUND**

**I. PROCEDURAL BACKGROUND**

Pham filed his initial complaint against these defendants, asserting causes of action arising only under federal law, on July 24, 2017. Dkt. No. 1. He filed an Amended Complaint as of right on September 7, 2017, again, only alleging federal causes of action. Dkt. No. 10. On November 27, 2017, pursuant to a stipulation, he filed a Second Amended Complaint that again asserted only federal causes of action. Dkt. No. 18.[1] Defendants answered the SAC on December 27, 2018.

Meanwhile, on October 10, 2017, Pham filed a state court action against these same defendants (except also naming the UCSF School of Dentistry). Case No. 18-1498, Dkt. No. 1. In his state court complaint, Pham asserted 18 causes of action arising under California law and one arising under federal law. That case was removed to this Court on March 8, 2018. The defendants moved to dismiss, but plaintiff voluntarily dismissed his only federal claim and then moved to remand. Dkt. Nos. 17, 18. The "state law" case was related to this action. After the cases were related, the parties stipulated to withdrawing the remand motion and allowing plaintiff to file a consolidated Third Amended Complaint in this action, joining all of his remaining claims together. Dkt. No. 23, Case. No. 18-1498. On June 6, 2018, Pham also stipulated to drop additional claims; declining to prosecute his claim for slander and his claims for violation of California Labor Code §§ 201, 218.5 and 226. Dkt. No. 24.[2]

On June 18, 2018, plaintiff filed his TAC. The TAC asserts 26 causes of action, the 10 based on violation of federal law contained in the SAC plus the following claims arising under state law: (11) Unequal Pay Violation, California Labor Code § 1197.5; (12) Violation California

---

[1] The causes of action alleged in the SAC are violations of: (i) the Fair Labor Standards Act (FLSA), Retaliation; (ii) violation of the Equal Pay Act (EPA); (iii) 42 U.S.C. § 1983 for deprivation of First Amendment Right of Free Speech; (iv) violation of Title VII based on discrimination and retaliation; (v) violation of Title VII based on discrimination; (vi) 42 U.S.C. § 1981a based on discrimination; (vii) § 1983 violation based on retaliation (Monel claim); (viii) § 1983 retaliation for deprivation of property and due process rights under the Fourteenth Amendment; (ix) Title VII based on hostile work environment; and (x) injunctive relief. SAC, Dkt. No. 18.

[2] Following the consolidation of these cases, Case. No. 18-1498 is effectively closed and all filing and proceedings maintained under this case number, 17-4194.

2

1  Labor Code § 1102.5; (13) Retaliation under FEHA; (14) Discrimination under FEHA; (15) Retaliation in violation of Health & Safety Code § 1278.5; (16) Breach of Covenant of Food Faith and Fair Dealing; (17) Constructive Trust/Fiduciary Duty; (18) Invasion of Privacy;[3] (19) Bad Faith Breach of Contract-Quantum Merit-Unjust Enrichment; (20) Negligent Hiring, Retention, Supervision, and Training; (21) Intentional infliction of Emotional Distress; (22) Violations of Labor Code §221, §223; (23) Common Count Wages Due for Service Had and Received; (24) Negligence Misrepresentation, Government Code § 815.2; (25) Negligence, Government Code § 815.2; (26) Statutory Interest on Unpaid Wages Labor Code § 218.6; and a claim for punitive damages. TAC, Dkt. No. 26.

Defendants move to dismiss a number, but not all, of the state law causes of action. As to the University, defendants argue that the University is: (1) is immune from direct liability for the non-statutory tort claims; (2) is immune from indirect liability for the non-statutory tort claims (constructive trust/fiduciary duty; negligent hiring, retention, etc.; common law unpaid wages; negligence-based claims); (3) Labor Code section 221 and 223 cannot be enforced against the University; and (4) the contract claims fail.

As to the individual defendants, they argue: (1) the individuals cannot be liable for the Labor Code violations; (2) the individual defendants do not have a fiduciary relationship with plaintiff; and (3) the individuals cannot be liable for punitive damages.

## II.  FACTUAL BACKGROUND

Pham has worked as a half-time dentist at OMFS since August 2001. He agreed with Pogrel, then the department chairman, to serve as a 50% Senior Dentist, performing two days of clinical service per week. TAC ¶ 27. In return, the department was to pay Pham at "the top level of the senior dentist salary scale with full benefits" at 50% because of his half-time status. *Id*. ¶¶ 27, 35, 36. In late 2004 and early 2005, Pogrel verbally offered Pham a full-time position at $239,600. *Id*. ¶ 37. But when Pham asked for a written contract, Pogrel reduced the offer by

---

[3] As noted above, Pham dismissed his cause of action for Invasion of Privacy, based on the Fourth Amendment. In his TAC, Pham reasserts an Invasion of Privacy claim but this time it is based on violation of the California Constitution. TAC ¶¶ 178-182.

3

$42,100, and Pham did not accept. *Id*. Pogrel subsequently again "agreed to pay Dr. Pham at the highest level of the senior dentist pay scale." *Id*. ¶ 38.[4]

Despite Pham's considerable contributions to the department, *id*. ¶¶ 28-35, and his alleged agreement with Pogrel, *id*. ¶ 36, defendants stopped paying Pham at the top level of the salary scale. *Id*. ¶¶ 40-41. The University's Central HR record shows that beginning on October 1, 2007, senior dentists received a salary increase of $30,500. *Id*. ¶ 39. But Pham did not receive this increase. *Id*. Since then, Pham's salary has no longer been at the highest level of the senior dentist salary scale, as required by Pham's contract with Pogrel. *Id*. ¶ 40.

Pham alleges that defendants' failure to uphold the alleged agreement was not merely incidental, because the individual defendants repeatedly misrepresented their intention and ability to raise his salary. *Id*. ¶¶ 40-41. When Pham informed Pogrel of the alleged breach in 2011, Pogrel falsely stated that Pham was already paid at the highest level of staff dentists. *Id*. ¶ 40. However, Pogrel allegedly colluded with a coworker to lie to Pham that it would take 20 years to get to the highest level of the senior dentist salary scale, despite already having told Pham that he was at the highest level for a senior dentist. *Id*. ¶ 41. Further, while Pogrel claimed Pham was at "step 6" of the pay scale, this was false because the dentist pay scale only has three levels. *Id*. ¶ 42. A Salary History chart compiled by Pham shows that he did not receive the full amount of subsequent pay raises, either. *Id*. ¶ 44. Pham calculates the total unpaid wages owed to him through July 1, 2016, as $144,719.06. *Id*. The SAC also states that "[r]ecent HR evidence as of December 2, 2016" shows the total amount owed is $177,327.00. *Id*.[5]

In addition to the alleged discrimination involving Pham's salary, Pham alleges that the defendants also subjected him to a hostile work environment. Defendants' conduct allegedly includes:
    i.  Pogrel physically pushing Pham out of Pogrel's office because Pogrel did not want to increase Pham's salary. *Id*. ¶ 45.

---

[4] Dr. Pham claims this agreement is evidenced by attached "Statements of Proposed Compensation," but these do not appear within the TAC, and nothing is attached to the TAC. *Id*. ¶ 38.

[5] It is unclear which amount Pham is asking for.

4

    ii.    Pogrel purposefully humiliating Pham in front of his peers by stating at the UCSF International Symposium that Pham should be fired because he was not entering treatments on the computer and patients and staff were complaining about him. *Id*. ¶ 48.

    iii.    Pogrel reprimanding Pham for failing to comply with the aforementioned policy, although Pham had never been informed about the policy because Pogrel had barred him from faculty meetings where the policy was discussed. *Id*. ¶ 49.

    iv.    Pogrel opening Pham's mail. *Id*. ¶ 46.

    v.    Pogrel taking credit for Pham's work by prohibiting him from telling patients who actually performed their surgery. *Id*. ¶ 51

    vi.    The individual defendants discriminating against Pham based on his national origin (Vietnamese) and gender by treating faculty members of other national origins better and providing them with higher salaries and by treating an "incompetent" female faculty member more favorably than Pham. *Id*. ¶ 67.

Pham also alleges that Bast, the current department chairman, retaliated against him for reporting another doctor's "incompetent" patient care on May 18, 2016. *Id*. ¶¶ 57, 62, 66. The reports concerned a white female doctor referred to as "Dr. P." *Id*. ¶ 57.

Pham alleges that Bast responded to this report by concocting an investigation of Pham for "acts of serious misconduct" and reneging on a promised pay raise. *Id*. ¶¶ 61-63, 66. In March 2016, Bast had informed Pham that his salary would be "restored back . . . to the highest level" and that he would receive a retroactive pay increase. *Id*. ¶ 63. Bast, however, failed to make these changes. *Id*. Instead, on August 12, 2016—three months after Pham's complaint about Dr. P.— the University informed Pham that he was being investigated for "acts of serious misconduct in violation of the UC Nondiscrimination and Affirmative Action Policy." *Id*. The University alleged that Pham "engaged in hostile behavior against [Dr. P.] based on her gender," including encouraging faculty and staff not to work with her and making false claims to Bast about her incompetence. *Id*. In an alleged final act of retaliation, on April 4, 2017, the University reduced Pham's part-time work from 50% to 40%, leading him to no longer accrue vacation or sick leave. *Id*. ¶¶ 55, 56.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." Id. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I.  DIRECT AND VICARIOUS LIABILITY FOR NON-STATUTORY TORTS**

The University argues that Pham's Seventeenth (Constructive Trust/Fiduciary Duty), Twentieth (Negligent Hiring, Retention, Supervision, and Training), Twenty-Third (Common Count Wages Due), Twenty-Fourth (Negligent Misrepresentation), and Twenty-Fifth (Negligence) Causes of Action all fail as a matter of law because under California Government Code section 815(a), a state entity like the University has no direct common law tort liability. Mot. at 5-7.

Section 815(a) of the Government Claims Act states that, except as otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." The section "abolishes all common law or judicially declared forms of liability for public entities," except for liability

required by the federal or state Constitution. *Miklosy v. Regents*, 44 Cal. 4th 876, 899 (2008) (relying on legislative history). California Government Code section 811.2 defines the Regents of the University of California as a "public entity." In addition, the California Constitution grants the Regents "broad powers" to organize and govern the University. *Miklosy*, 44 Cal. 4th at 889 (citing *San Francisco Labor Council v. Regents of University of California*, 26 Cal.3d 785, 788 (1980)). Therefore, the University "retain[s] a degree of control over the terms and scope of its own liability." *Id*. The parties agree that the University is a "public entity" and, therefore, subject to § 815(a).

Pham does not directly contest that the University cannot be held directly liable on these common law tort claims. Instead, Pham contends that the University is *vicariously* liable for these torts committed by its employees Pogrel and Bast. Oppo. at 2-3.

Pham relies on § 815.2(a) of the Government Code, making public entities liable for injury caused by their employees acting within the scope of their employment. That section provides:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
>
> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Pham argues that under § 815.2(a), the University can be held vicariously liable for the individual defendants' actions, because he has pleaded that Pogrel and Bast were UCSF employees acting within their scope of employment. Defendants counter that even if the University could be held theoretically indirectly liable for some non-statutory torts, plaintiff cannot or has not alleged the non-statutory torts at issue and that they should be dismissed.

### A. Constructive Trust/Fiduciary Duty (17th COA)

Defendants argue that this claim should be dismissed as to all defendants because Pham cannot allege a fiduciary relationship between himself and Pogrel and Bast, precluding the direct claim again the individuals and the indirect claim against the University. Pham counters that the

7

individual defendants are the University's agents and as such owed fiduciary duties in their managerial capacities to Pham. That is incorrect.

"Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 386 (2008). Supervisor-employee relationships are not fiduciary relationships under California law. *O'Byrne v. Santa Monica–UCLA Med. Ctr.*, 94 Cal. App. 4th 797, 811 (2001) (rejecting plaintiff's contention that hospital has fiduciary duty to its staff); *Harris v. Harris*, No. 2:11-CV-2186 KJN PS, 2012 WL 5187764, at *18 (E.D. Cal. Oct. 17, 2012) (rejecting plaintiff's claim for breach of fiduciary duty against plaintiff's supervisors); *Amid v. Hawthorne Cmty. Med. Grp., Inc.*, 212 Cal.App.3d 1383, 1391 (1989) ("A bare employee-employer relationship does not create a confidential relationship.").

The cases Pham cites do not persuade me otherwise. *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1328 (1996) (not addressing fiduciary duties, and the portion cited by plaintiff is an unpublished part of a concurrence); *Gilman v. Dalby*, 176 Cal. App. 4th 606, 614 (2009) (no fiduciary duty existed where medical lien only required defendant-attorney to withhold money in the event plaintiff's litigation was successful); *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 286 (Ct. App. 1964) (addressing employee's fiduciary duty to company, not vice versa); *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000) (same).[6]

In sum, Pham has not stated a claim for breach of fiduciary duty against the individual defendants and cannot state a direct claim against the University. Accordingly, the 17th cause of action for constructive trust/breach of fiduciary duty is DISMISSED with PREJUDICE as to all defendants.

---

[6] As modified (Sept. 14, 2000), as modified on denial of reh'g (Sept. 26, 2000) (same), and disapproved of by *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004).

### B. Negligent Hiring, Retention, Supervision, and Training (20th COA)

Pham contends that the University "negligently hired, . . . supervised, and trained its managers," and that this negligence led to the harms he suffered. TAC ¶ 192. Defendants argue, first, that because this claim is asserted *only* against UCSF it is a non-statutory tort claim barred by § 815. Pham appears to concede that § 815(a) immunizes the University from direct liability for the negligent hiring claim. He, nevertheless, contends that the University may nevertheless be held vicariously liable under § 815.2(a) for the conduct of Pogrel and Bast.[7]

Pham is correct that an entity can be held vicariously liable for negligent hiring, where its employees were negligent in *their* hiring, retention, or supervision and that conduct caused a plaintiff's injuries. For example, in *C.A. v. William S. Hart Union High School District*, 53 Cal. 4th 861, 865 (2012), the California Supreme Court held that a public entity could be held vicariously liable for negligent hiring, retention, and supervision. There, the plaintiff's claim for damages arose from a guidance counselor's sexual harassment and abuse of the minor plaintiff. The court held that given the context and the duty the school district owed to pupils in its schools, the public school district could be held vicariously liable, consistent with section 815.2 for the conduct of its *supervisory and administrative personnel* who knew or should have known of the guidance counselor's harassing and abusive propensities but nonetheless hired, retained, and inadequately supervised the counselor. *Id.* at 865; *see also Roe v. California Dep't of Developmental Servs.*, No. 16-CV-03745-WHO, 2017 WL 2311303, at *8 (N.D. Cal. May 26, 2017) ("Roe's claim . . . is based on a vicarious liability theory, not a direct liability theory.").

Here, however, Pham is trying to hold the University liable for the conduct of Pogrel and Bast – that is a direct liability theory, not a vicarious liability theory. Pham does not argue that any *other* University employee negligently hired, retained, or supervised Pogrel or Bast. Nor does Pham allege in his TAC, that a university employee hired, retained, or supervised by Pogrel and Bast caused plaintiff any injury.

---

[7] Somewhat inexplicably, Pham also argues in his Opposition that the University can be held liable because Section 558(b) of the California Labor Code provides a statutory basis requiring the University to adhere to provisions of the Labor Code and wage orders. Oppo. at 4. The Labor Code provisions are addressed below, but I note section 558(b) has nothing to do with negligent hiring, supervision, or training as alleged by Pham.

9

In opposition, Pham attempts to salvage this claim by arguing that because Pogrel and Bast negligently supervised "others in the Dental unit" (presumably Dr. P.), and Pham then complained about the "others" and their substandard care, and then Pham was allegedly retaliated against for *that* First Amendment-protected conduct, he has alleged a claim for negligent supervision. Oppo. at 5. This chain of inferences, and the lack of a direct causal harm to Pham from Pogrel and Basts' "hiring or supervision" of Dr. P. cannot form a basis of a negligent hiring, supervision, and training claim under any of the authority relied on by Pham.

In sum, even if it could be alleged in this context (employment relationships in a university setting), vicarious liability for negligent hiring, retention, or supervision has not been alleged.[8] The 20th Cause of Action is DISMISSED with prejudice.

### C. Common Count Wages Due (23rd COA)

The University argues that this claim, again, is only alleged against the University and cannot be allowed because the University is immune. In Opposition, Pham does not directly address this claim at all, except in a footnote where he asserts that there is a "statutory basis" for this claim under California Labor Code sections 500-558, in particular section 558(b), and Wage Order 4-2001.

The first problem is that Pham has alleged a statutory violation under the Labor Code for unpaid wages, but under different sections. *See infra* (discussing Labor Code sections 221 and 223). If he wanted to allege a section 558 claim he could have (and should have done so) but instead he alleged a "common count" that cannot be brought against the University. In addition, even if he had alleged this section, on its face Section 558(b) provides only that the Labor Commissioner may issue citations for violations of the Labor Codes. Pham cites no authority that an individual has a private right of action under this section, much less that the existence of this section somehow makes a public entity liable for a common law tort for unpaid wages.

---

[8] Vicarious liability in *C.A. v. William S. Hart Union High School District Liability* was tethered to the "special duty" the school district had towards its students. Pham cites no authority to establish the existence of a "special duty" of care in this *employment* context. *See, e.g., Wells v. Regents of U. of California*, 15-CV-01700-SI, 2015 WL 5138181, at \*6 (N.D. Cal. Sept. 1, 2015) (dismissing claim in university employment context).

Finally, to the extent that Pham is attempting through this cause to seek a recovery in quantum meruit, that too is barred because section 815 immunizes public entities from quantum meruit claims. *Sheppard v. N. Orange Cty. Reg'l Occupational Program*, 191 Cal. App. 4th 289, 314, (2010) ("The trial court properly sustained the demurrer to the quantum meruit claim because such a claim cannot be asserted against a public entity."); *Orthopedic Specialists of S. California v. California Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644, 650 (2014) (similar).

Pham's 23rd Cause of Action is DISMISSED with PREJUDICE.

### D. Negligent Misrepresentation (24th COA) and Negligence (25th COA)

In his opposition, Pham does not dispute that he cannot state "negligent misrepresentation" and negligence claims directly against the University. Instead, he argues that these claims are embedded within his contract claims and based on the promises made to him regarding his salary level. *See* Oppo. at 5-6 ("Gov. Code § 814 provides an exception to § 818.8 immunity where misrepresentations and negligence based in contract are outside the reach of § 818.8. Thus, the shield against lawsuits against public employees excludes actions arising under contract.").[9]

Pham's only course of remedy for these unpaid wages, by his own logic, would lie – if at all – under contract law or statutory wage claims and not under tort law. Pham's 24th and 25th Causes of Action, therefore, are DISMISSED with prejudice.

## II. LABOR CODE VIOLATIONS

### A. Labor Code Sections 221 & 223 - Against the University[10]

The University first relies on a series of cases that "have consistently held the Regents is exempt from statutes regulating the wages and benefits of employees and other workers, including

---

[9] As a source of authority explaining his theory under these two causes of action, Pham relies on *Longshore v. County of Ventura*, 25 Cal. 3d 14, 22 (1979), where the court held that the Tort Claims Act does not bar "[a]claim for compensation owed by an employer for services already performed is contractual." *Id*. at 22. Pham is at most entitled to contract remedies – in order words unpaid wages – not tort remedies. His contract and wage claims are discussed below.

[10] Labor Code section 221 governs "repayment of wages" and provides that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Section 223 governs "Payment of less than statutory or contractual wage scale" and provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

11

those pertaining to prevailing wages, overtime pay, and indemnification for the cost of work uniforms and maintenance, on the ground those matters are internal affairs of the university that do not come within any of the exceptions to constitutional immunity." *Goldbaum v. Regents of U. of California*, 191 Cal. App. 4th 703, 706 (Cal. App. 4th Dist. 2011) (citing cases).[11] For example, in *Kim v. Regents of U. of California*, 80 Cal. App. 4th 160 (Cal. App. 1st Dist. 2000), the court held that the Regents was exempt from the mandate of overtime wage regulation contained in Labor Code section 1194. As explained in *Goldbaum*, as a "public trust" governed by the Regents, the University is subject to regulation by the California legislature in three areas: (i) appropriations; (ii) under the Legislature's "general police powers," including workers compensation; and (iii) legislation necessary to regulate "matters of statewide concern not involving internal university affairs." *Id*. at 709. In *Kim*, the court rejected the idea that payment for overtime under the Labor Code was a matter of police power or statewide concern. Following *Kim*'s reasoning, I agree with the University that it is exempt under the two labor code provisions relied on by Pham.

In addition, the University contends that while California Labor Code § 220 *expressly* exempts public entities from liability under some provisions of the Labor Code,[12] courts have held that public educational institutions are likewise exempt from other, not-specifically exempted labor code provisions. *See Kistler v. Redwoods Comm. College Dist*., 15 Cal.App.4th 1326 (1993) (holding, without discussion, that § 227.3 does not apply to public entities despite no express exemption). It argues that this is in recognition of the immunity provided under section 815(a), addressed above, which requires that a statute expressly apply on its face to a public entity. Therefore, the silence in the two labor code provisions at issue cannot overcome their immunity.

In support of this argument, the University relies on *California Correctional Peace*

---

[11] In *Goldbaum*, a professor had brought suit for breach of contract, seeking declaratory and writ relief. The parties settled, and professor moved for an award of attorney fees and costs under Labor Code § 218.5. The Court of Appeal concluded that plaintiff was not entitled to fees given the Regent's immunity.

[12] Section 200 provides that: "Sections 200 to 211, inclusive, and Sections 215 to 219, inclusive, do not apply to the payment of wages of employees directly employed by any county, incorporated city, or town or other municipal corporation." Because this express exemption covers Pham's Labor Code 218.6 clam (for unpaid wages) that claim is, without debate, DISMISSED with prejudice.

12

*Officers' Assn. v. State of California*, 188 Cal. App. 4th 646, 652 (Cal. App. 1st Dist. 2010), which recognized the "general rule" that unless "Labor Code provisions are specifically made applicable to public employers, they only apply to employers in the private sector." *Id*. at 652 (citing *Johnson v. Arvin–Edison Water Storage Dist*., 174 Cal.App.4th 729, 733 (2009)). In that case, the Court of Appeal concluded that labor code provisions mandating rest and meal periods did not apply to public entities.

Pham does not address *Kim* and the immunity specific to the University. Nor does Pham cite authority showing that sections 221 or 223 were intended to apply to public entities. The University is not liable under those sections of the Labor Code.

### B. Individual Defendants

Pham alleges the same Labor Code violations against the individual defendants. His claims must be dismissed because the individual defendants are not his employer and were not acting outside of the scope of their duties for the University. In *Martinez v. Combs*, 49 Cal. 4th 35, 37, 75 (2010), the Supreme Court of California refused to impose personal liability for Labor Code violations because the definition of "'employer' does not impose liability on individual corporate agents acting within the scope of their agency." *See also Reynolds v. Bement*, 36 Cal.4th 1075, 1086-1087 (2005) (the definition of an "employer" does not apply to individual officers or directors). The individual defendants, who are not alleged to have been acting beyond the scope of their employment or agency or as joint employers[13], cannot be individually liable for the Labor Code violations.

For the foregoing reasons, Pham's 22nd Cause of Action under Labor Code sections 221 and 223 and 26th Cause of Action for interest under section 218.6 are DISMISSED with PREJUDICE.

### III. CONTRACT CLAIMS

Defendants next argue that the 16th cause of action for breach of the covenant of good

---

[13] Pham's reliance on *Bowman v. Burnt Ends, LLC*, 2:17-CV-05782-RGK-SS, 2018 WL 485961, at *5 (C.D. Cal. Jan. 17, 2018), is misplaced as there are no allegations that Pogrel or Bast were "joint employers" of Pham along with the University or personally paid the Pham's wages.

faith and fair dealing, and the 19th cause of action for "bad faith breach of contract quantum merit—unjust enrichment" should be dismissed because (i) Pham's employment was governed by statute not contract and (ii) his claims are barred by § 815(a).

Pham does not allege that he and Pogrel or he and the University are parties to a written contract. At most, therefore, these claims are based on an alleged oral contract.[14] The University argues that public employment in California is governed by statute, not contract. As the court noted in *Kim v. Regents of U. of California*, 80 Cal. App. 4th at 164, "[i]n California public employment is held not by contract, but by statute. . . . our Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing. . . . This same general principle of law applies to civil service and noncivil service public employees alike." *Id.* at 164 (citations omitted). In *Kim*, the plaintiff could not state a claim for breach of contract or breach of the implied covenant against the Regents – the very same claims Pham asserts here against the same entity.[15]

Pham's contract claims (16th and 19th Causes of Action) are DISMISSED with PREJUDICE.

## IV. PUNITIVE DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS

Lastly, defendants argue that the court should dismiss Pham's punitive damages allegations against the individual defendants and strike that part of the Prayer for Relief because his allegations are too vague. I disagree.

---

[14] As noted above, the University is immune from a quantum meruit claim, so these "contract" claims cannot be based on that remedy.

[15] Pham's cases are wholly inapposite. In *Olson v. Cory*, 26 Cal. 3d 672, 537–672 (1980) the court held that legislation purporting to place a limit on cost-of-living increases previously provided for judicial salaries was unconstitutional as an impermissible impairment of vested contractual rights. Not only did this case not address the Regents, it addressed vested rights under the California Constitution, not the issues addressed here. *Shaw v. Regents of U. of California*, 58 Cal. App. 4th 44, 55 (Cal. App. 3d Dist. 1997), addressed a written contract (a patent royalty agreement). The alleged contract at issue here is neither written nor does it govern patent or intellectual property rights. In *Sheppard v. N. Orange County Regl. Occupational Program*, 191 Cal. App. 4th 289 (Cal. App. 4th Dist. 2010), a lecturer employed by school district *was* covered by California's wage and hour laws, so his claim seeking wages for unpaid time preparing not precluded by fact he was a public employee. Again, that case is not apposite to the facts or claims alleged here.

14

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal. App. 3d 374, 392 (1983). "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316–317 (1976); § 3294 (defining malice, oppression, and fraud). "'Malice' is defined as intentional injury *or* despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 712 (2009), as modified (Feb. 10, 2010); § 3294 (similar). "'Despicable conduct' is conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 817 (2002).

Pham's allegations include Pogrel's: (i) repeated failure to follow through with salary-related promise, (ii) "harassment" of Pham by pushing him out of Pogrel's office, (iii) invasion of his privacy by opening the letter (invading his privacy), (iv) humiliating him in front of his peers, (v) failing to inform him of policy changes and then reprimanding him for failing to follow those policies, (vi) taking credit for his work, and (vii) discriminating against him based on his national origin. Oppo. at 11. Then, with respect to Bast, Pham points to: (i) retaliation against Pham for whistleblowing on a fellow surgeon, (ii) continued fraud regarding his salary, and (iii) discrimination based on his national origin and gender.

These allegations, at least for pleading purposes, sufficiently allege intentional injury or "despicable conduct." While some of the alleged conduct may not by itself rise to that level—*e.g.*, opening Pham's mail—other alleged conduct viewed in a light most favorable to him plausibly alleges intentional injury—*e.g.*, humiliation in front of peers and retaliation. Further, Pham's complaint alleges a years-long fraud perpetrated by the individual defendants against him. Fraud can also be a basis for punitive damages. *See* Cal. Civ. Code § 3294 ("Fraud means an intentional misrepresentation, deceit or concealment of a material fact with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.").

Defendants' argument ignores the factual allegations that are incorporated by reference

15

into each cause of action and unduly focuses on the particular paragraph that seeks punitive damages. Finally, while it is true that Pham's requested amount of punitive damages ($3,000,000 or 9% of the net worth of each defendant) is not supported by specific facts, defendants point to no authority requiring it to be supported in that fashion at the pleading stage of the case. Accordingly, the motion is DENIED regarding Pham's claim for punitive damages and the request to strike paragraph 5 of the Prayer for Relief is also DENIED.

## CONCLUSION

The University's motion to dismiss is granted except for the motion to strike the punitive damages claim. Because Pham has had numerous opportunities to amend (including one following the University laying out each of its arguments that are addressed and accepted above) and no facts can be plausibly alleged to save these claims, the following causes of action are DISMISSED with PREJUDICE: sixteenth cause of action (breach of covenant of good faith and fair dealing), seventeenth cause of action (constructive trust-fiduciary duty), nineteenth cause of action (bad faith breach of contract/quantum meruit), twentieth cause of action (negligent hiring, supervision, training), twenty-second cause of action (Labor Code violations sections 221, 223), twenty-third cause of action (common count wages due), twenty–fourth cause of action (negligent misrepresentation), twenty-fifth cause of action (negligence), and twenty-sixth cause of action (interest under Labor Code section 218.6).

**IT IS SO ORDERED.**

Dated: August 22, 2018

William H. Orrick
United States District Judge